AMICABLE MUTUAL LIFE INSURANCE COMPANY *vs.* JOHN S. SEDGWICK & others.

An insurance company appointed an agent, to be paid by certain commissions with a guaranty that they should amount to a specified sum monthly, the agency to be terminated by either party at three months' notice. The agent gave bond conditioned faithfully to conform to all instructions of the company and to remit to them all sums received, less his commissions. The sureties on the bond knew the terms of the appointment. Subsequently the company and the agent agreed, without the knowledge of the sureties, that he should receive increased commissions, but give up all claim on the guaranty. *Held,* that this change in the mode of compensation did not discharge the sureties.

A bond reciting that the obligor had been appointed agent to an insurance company, bound him to conform to all instructions and to remit all moneys which he, as agent, should receive. Subsequently he resigned his agency in writing and the company accepted it also in writing, but he continued to be employed by them. *Held,* that the bond did not cover any default after the time of his resignation.

CONTRACT against John S. Sedgwick, Mary E. Sedgwick and George W. Randall, on a bond for $2000 dated September 2, 1869, entered into by John S. Sedgwick as principal, and the other defendants as sureties, the condition of which was as follows : "If the above bonded John S. Sedgwick, who has been appointed agent of the Amicable Mutual Life Insurance Company, shall faithfully conform to all instructions and directions which he, as such agent, may at any time receive from the said Amicable Mutual Life Insurance Company, and shall, on the first day of each month, remit to the office of the company all moneys received by him, not previously remitted, as such agent, less his commissions, together with his account of the same, then the above obligation to be void, otherwise to remain in full force."

The case was referred by the Superior Court to an auditor, whose report, which it was agreed should be taken as a statement of facts on which such judgment should be rendered as was required by law, was substantially as follows :

John S. Sedgwick was appointed on August 16, 1869, agent of the plaintiffs by a letter from them, in which they agreed that his commissions should be twenty-five per cent. of first premiums and five per cent. of renewal premiums, guaranteed that his income from commissions should not fall short of $166.66 a month, and stipulated that the agreement might be terminated by thirty days' notice from either party. John S. Sedgwick accepted the appointment, and with the other defendants executed the bond declared on, the other defendants knowing, before they signed the bond, the terms of his appointment.

On February 19, 1870, the plaintiffs and John S. Sedgwick agreed in writing that he should relinquish all claim to the guaranty and receive in lieu thereof an increase in his commissions, so that he should have thirty per cent. of first premiums and five per cent. of renewal premiums. At this time there had been no breach of the condition of the bond. On August 29, 1870, John S. Sedgwick notified the plaintiffs in writing of his resignation of the agency, to take effect October 30, 1870, and the plaintiffs accepted it. On October 30, he was a defaulter in his accounts with the plaintiffs to the amount of $409.90.

He continued to render services to the plaintiffs, to solicit business for them, and to collect and receive moneys due them until May 1871, when he ceased entirely to act for them, being then a defaulter to the amount of $615.81. The defendants Mary E. Sedgwick and Randall contended that they were not liable for any default after February 19, 1870, and all the defendants contended that they were not liable for any default after October 30, 1870.

The Superior Court ordered judgment for the plaintiffs for $615.81 against all the defendants, and they appealed.

*J. M. Stebbins,* for the plaintiffs.

*M. P. Knowlton, (L. White* with him,) for the defendants, cited *Bigelow* v. *Bridge,* 8 Mass. 275; *Boston Hat Manufactory* v. *Messinger,* 2 Pick. 223; *Amherst Bank* v. *Root,* 2 Met. 522, 543, 548, 556; *Grocers' Bank* v. *Kingman,* 16 Gray, 474; *Miller* v. *Stewart,* 9 Wheat. 681; *Bamford* v. *Iles,* 3 Exch. 380; *North Western Railway Co.* v. *Whinray,* 10 Exch. 77; *Watts* v. *Shuttle-*

*worth*, 5 H. & N. 235 ; *Kitson* v. *Julian*, 4 E. & B. 853 ; *Dobbin* v. *Bradley*, 17 Wend. 422; *Rowan* v. *Sharp's Rifle Manuf. Co.* 33 Conn. 1.

AMES, J. The bond declared upon is a guaranty of the honesty and good faith of John S. Sedgwick, in the fulfilment of his duties as the plaintiffs' agent. It stipulates, in the most general terms, that he " shall faithfully conform to all instructions and directions which he, as such agent, may at any time receive from " them, " and shall, on the first day of each month, remit to the office of the company all moneys received by him, not previously remitted, as such agent, less his commissions, together with his account of the same." It does not recite what his duties, in other respects, are to be, nor what shall be the rate or amount of his commissions. As he has proved to be a defaulter, the plaintiffs are entitled to maintain their action, unless some sufficient reason to the contrary appears in the auditor's report.

It is found by the auditor that whatever default occurred, in the agent's accounts, was of a date subsequent to February 19, 1870, and that at that date a new arrangement was made between him and the plaintiffs, which changed his remuneration. The original contract contained on their part a guaranty that his commissions should not be less than a certain monthly sum, and by the modification agreed upon in the written contract of February 19, 1870, the agent relinquished all claim to that guaranty thereafter, and was to receive in place of such guaranty an increase of commissions. The sureties on the bond had no knowledge of this new arrangement, and they insist that it was a new appointment, and was such a change in the contract as to discharge them from their liability upon the bond. But there is no ground for saying that this new agreement affected the identity of the office which he held, or of the duties which he was bound to perform. He was still to collect and remit moneys, and to receive his compensation in the form of commissions. The guaranty that his monthly commissions should not be less than a certain sum, being accompanied with a provision that the contract should be terminable at the will of either party upon thirty days' notice, did not make him an agent at a fixed salary. In this re-

spect the case differs from *Northwestern Railway Co.* v. *Whinray* 10 Exch. 77, in which it was held that when the mode of compensation to an agent was changed from a definite salary of £100 a year to a commission upon the amount of sales which the agent might make, the effect of the change was to exonerate the sureties of the agent. But in the case at bar, the compensation was to be by commissions. All parties must have understood that it was to be in proportion to the business. There is nothing in the bond, or the letter of appointment, importing that the guaranty, as to the amount, should prevent the plaintiffs from withdrawing from the contract, if it proved burdensome. The effect of the arrangement of February 19, 1870, was therefore to continue the same contract, requiring the same duties as before, but at what might prove a reduced compensation or an increased one, according to the amount of business done. In *Frank* v. *Edwards*, 8 Exch. 214, it was held that a reduction of the salary of an officer after his appointment did not operate as a discharge of the sureties on his official bond. Parke, B., in delivering the judgment of the court, says : " If the sureties had thought that the amount of the salary was an essential ingredient in the contract, they ought to have taken care to have had a stipulation inserted in the condition of the bond, that they would be liable only so long as the overseer was continued at the same salary." In the case at bar, there is nothing in the bond that imports that the commission was to be unchangeable, or that the liability of the sureties depended on the continuance of the guaranty. There is no evidence that the change as to the remuneration subjected ·the sureties to any greater or other risk than they intended to assume. The bond was a general guaranty that the agent would account faithfully and punctually for all money collected by him in that capacity, less his commissions whatever they might be. The course of dealing, the mode of accounting, and the method of transacting the business, are not provided for by the terms of the bond. *Stewart* v. *M'Kean*, 10 Exch. 675. It is not contended that the amount guaranteed was to be paid in any other mode than by deducting it from the amount received by the agent for premiums.

The majority of the court agree in holding that upon the written resignation by the agent, to take effect at a future day, and its acceptance in writing by the plaintiffs, his agency under the appointment contemplated by the bond came to an end. If he continued after that day to act in the same capacity, it must be considered as the result of some new arrangement, equivalent to a new appointment, to which the bond in suit did not apply. As we find that there has been a breach of the bond, the plaintiffs are therefore entitled to a judgment against all the defendants for the penal sum, but the execution can only issue for the amount found by the auditor, as the defalcation on October 30, 1870, namely, $409.90, with interest from the time when payment should have been made.