THE DOMESTIC SEWING MACHINE COMPANY V. WEBSTER ET AL.

1. **Contract**: BOND: SURETY. Where a bond stipulated that the surety should be liable for "any and every indebtedness or liability now existing, or which may hereafter in any manner exist or be incurred on the part of" his principal, and a cotemporaneous agreement was entered into between the principal and the obligee, expressing the conditions of the former's employment by the latter, it was *held*, that a change in the terms of the contract affecting the compensation of the principal, without the knowledge or consent of the surety, would not release the latter from liability on the bond.

2. ——: ——: EVIDENCE. The bond and agreement were independent of each other, and parol evidence was not admissible to show that the surety's liability was measured by the agreement.

*Appeal from Muscatine District Court.*

MONDAY, DECEMBER 10.

THE plaintiff filed its petition claiming of defendants the sum of $4,000, for an alleged breach of the conditions of a bond of which the following is a copy: "Know all men by these presents, that Wm. Webster, of Rock Island, Ills., as principal, and W. P. Wright, of Montpelier township, Muscatine county, State of Iowa, as surety, in consideration of one dollar to them paid by the Domestic Sewing Machine Co. (a corporation duly organized under the laws of the State of Ohio), the receipt whereof is acknowledged, are hereby held and firmly bound unto said company in the sum of four thousand dollars, lawful money of the United States of America, to be paid to said Domestic Sewing Machine Company, their successors, representatives or assigns. For which payment, well and truly to be made, they bind themselves, their heirs, executors and administrators, jointly and severally, firmly by these presents, scaled with their seals, dated the sixth of January, 1873.

"The condition of the above obligation is such that if the above bounden Wm. Webster, his heirs, executors or administrators, shall well and truly pay or cause to be paid any and every indebtedness or liability now existing, or which may hereafter in any manner exist or be incurred on the part of the

said Wm. Webster to the said Domestic Sewing Machine Company, whether such indebtedness or liability shall exist in the shape of book accounts, notes, renewals or extensions of notes or accounts, acceptances, indorsements or otherwise (hereby waiving presentments for payment, notice of non-payment, protest and notice of protest and diligence upon all notes now or hereafter executed, indorsed, transferred, guaranteed or assigned by the said Wm. Webster to the said Domestic Sewing Machine Company, as well as notice of default on the part of the said Wm. Webster in the payment of any indebtedness of whatever nature of said company; then this obligation to be void, but otherwise to remain in full force and effect."

The defendant Wright answered admitting the execution of the bond, and alleging as follows:

"That at the time of executing said bond his co-defendant and plaintiff entered into a written agreement for the performance of which this defendant signed the bond as surety. By the terms of said agreement Webster became the exclusive general agent of plaintiff for sale of machines in Rock Island county, Ills., upon following terms: machines and accessories to be supplied to Webster in shipping order at Chicago or other distributing place, at 33⅓ per cent discount from published retail prices. Settlements to be made by note at three months from date of invoice, payable to plaintiff or order at First National Bank of Rock Island, with current exchange on New York. Upon this basis, Webster to have any reasonable line of credit for which he might furnish security. Plaintiff agreed to accept customers' notes payable at six months, properly indorsed, in payment of Webster's notes; that upon the conditions expressed in said agreement, and to secure the performance of same, he executed the bond sued on, and for no other purpose.

"That after the execution of said bond and agreement the plaintiff changed the terms and conditions of the latter without this defendant's knowledge or consent. Plaintiff and defendant, Webster, entered into a new contract in relation to said agency of which this defendant was ignorant until after the agency terminated, and that he did not ratify the same; that by the terms of said new contract, made about January 21,

1873, plaintiff was to accept, and did accept, Webster's notes payable in customers' notes and leases, and at places other than that named in the original agreement; that plaintiff received from Webster three notes, copies of which are attached to answer, numbered 7, 8 and 9; that the acceptance of said notes, they being payable in customers' notes and leases, at 74 State street, Chicago, was contrary to the terms of the agreement in pursuance of which the bond was executed; that said notes were not made payable in three months from date of invoice. Defendant says that September 27, 1873, plaintiff and Webster made an agreement by which Webster was to give his note in the first instance for machines, etc., at six months, instead of customers' notes and leases at three months; that, in pursuance of said new agreement, notes, copies of which are numbered 1, 2, 3 and 10, in defendant's answer, were executed by Webster, and received by plaintiff; that after the execution of said new agreement plaintiff accepted of Webster other notes payable at sixty and ninety days for indebtedness long past due, without defendant's knowledge or consent; that other notes, copies of which are attached to answer, numbered 4, 5 and 11, were received by plaintiff from Webster, said notes not being made payable at any particular place, and that this defendant is not liable for the indebtedness thereby created.

"Defendant alleges that the changes in said original agreement, in relation to said agency, were made without his knowledge or consent, and that the notes referred to in plaintiff's petition were made in pursuance of the new agreements. The said original agreement was thereby suspended, and is void as to this defendant. That the time, terms, places and manner of payment by said Webster of liabilities under said agreement were extended, altered, and new liabilities added, in respect to said agency, of which defendant had no knowledge, and to which he did not consent."

To this answer the plaintiff demurred as follows:

1. It does not appear that the alleged contract between defendant, Webster, and plaintiff, set out in answer, was made a part of, or condition in, said bond declared on.

2. It does not appear that said alleged change in the orig-

inal contract, or said new contract between defendant and plaintiff, was materially or substantially variant from, or inconsistent with, the said alleged original contract, or materially increased the defendant's liability, or was materially inconsistent with or variant from the terms of said bond declared on by plaintiff. The court overruled this demurrer. The plaintiff elected to stand upon its demurrer, and the court rendered judgment for defendant for costs. The plaintiff appeals.

*Twomey & Stuyvesant* and *Robert T. McNeal*, for appellant.

*D. C. Cloud* and *Richman & Carskaddan*, for appellee.

DAY, CH. J. The condition of the bond executed by the defendant, Wright, as surety, is that the defendant, Webster, shall pay any and every indebtedness or liability existing at the time of making the bond, or which might thereafter in any manner exist or be incurred on the part of Webster to the said Sewing Machine Company, "whether such indebtedness or liability shall exist in the shape of book accounts, notes, renewals or extensions of notes or accounts, acceptances, indorsements or otherwise." The bond, upon its face, appears to embody a full and complete contract. The substance and effect of the answer, however, is that the defendant, Wright, did not by the execution of the bond sued on become a surety for the payment of all the liabilities enumerated in the bond; that at the time of the execution of the bond the plaintiff and the defendant, Webster, entered into another distinct contract in writing, and that the defendant, Wright, obligated himself that Webster should perform the conditions of this contract, and not the conditions enumerated in the bond. It is alleged that by the terms of this written agreement Webster became the agent of plaintiff for the sale of sewing machines, to be supplied him in shipping order at Chicago or other distributing point, at 33⅓ per cent discount, to be settled for by Webster by note at three months from date of invoice, payable to plaintiff at First National Bank of Rock Island, and that in payment of these notes of Webster plaintiff agreed to accept customers' notes payable in

*1. CONTRACT: bond: surety.*

six months, properly indorsed. It is alleged that defendant, Wright, executed the bond to secure the performance of this agreement, and for no other purpose. It is very apparent that the obligation which defendant alleges he assumed is quite different from the one which, upon the face of the bond, he appears to have assumed. He alleges that he simply agreed that Webster would settle with his own notes payable at three months from date of invoice, and would turn over in payment of these customers' notes, properly indorsed, payable at six months, whereas in the bond he undertakes that Webster shall pay "any and every indebtedness or liability now existing, or which may hereafter in any manner exist or be incurred on the part of the said Wm. Webster to the said Domestic Sewing Machine Company." It is quite true that a written agreement may be embraced in several separate papers, and, when it becomes apparent that such is the case, all must be construed together in order to discover the intention of the parties. But the bond and the agreement referred to in this case have no necessary relation to, or dependence upon, each other. It is quite reasonable that plaintiff should have entered into the contract with Webster, referred to in the answer, and that Wright should have become surety that Webster would pay to plaintiff every indebtedness or liability then existing, or which might thereafter in any manner exist or be incurred. Neither the bond nor the agreement provides or implies that the plaintiff and Webster might not change the terms of the contract existing between them. The law imposes no restriction upon such change in the absence of any valid agreement that it shall not be made. The authorities cited by appellant support this proposition. In the *Amicable Mutual Life Insurance Company v. Sedgwick*, 110 Mass., 163, plaintiff appointed Sedgwick its agent, and agreed that his commissions should be twenty-five per cent of the first premiums, and five per cent of renewals, and guaranteed that his commissions should not be less than $166.66 per month. The defendants, knowing of these terms, executed a bond with the agent conditioned that he should faithfully conform to the instructions of the company, and pay over all moneys received by him. Afterward,

without the consent or knowledge of defendants, the company and the agent entered into a new arrangement, whereby the guaranty as to the minimum of the agent's commissions was abandoned, and instead it was agreed that he should receive thirty per cent of first premiums. Defendants pleaded that this change discharged them as sureties on the agent's bond. The court holds otherwise, and approves and adopts the language used by the court in the similar case of *Frank v. Edwards*, 8 Exch., 214: "If the sureties had thought that the amount of the salary was an essential ingredient of the contract, they ought to have taken care to have had a stipulation inserted in the condition of the bond, that they would be liable only so long as the overseer was continued at the same salary." See also, *Sanderson v. Aston*, 8 Law Rep., Exch., 73.

It is claimed, however, that it was agreed between the plaintiff and Wright that the liability of the latter should be measured by an agreement made cotemporaneously with the execution of the bond between plaintiff and Webster. We have already seen that the bond and the agreement have no necessary relation to or dependence upon each other. Each, in itself, constitutes a distinct and complete agreement; neither, in any manner, refers to the other. If any relation exists between them, it must be established by parol testimony. This is what the defendant claims the right, and asks that he may be permitted to do; he claims that he may show by parol, for it does not appear in any other manner, that the contract between plaintiff and Webster enters into and measures the extent of his contract with plaintiff; in other words, that he did not agree that Webster should perform the conditions named in the bond, but simply that he should perform certain other conditions mentioned in a separate contract. It is clear that if this is permitted a contract will be substituted for the bond in many essential respects different from what the bond upon its face imports. This certainly would violate the rule that "parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument." True, the contract which it is sought to inject into the bond is in writing, but the fact that it was

2. ———: ———: evidence.

intended to constitute a part of the bond, if it appears at all, can appear only by parol testimony. We feel satisfied that the bond can not be so modified or varied. If the surety deemed a continuation of the terms of the agreement between plaintiff and Webster material, he should have stipulated for such continuation in the bond.

This case differs from *Davis Sewing Machine Company v. McGinnis et al.*, 45 Iowa, 538. In that case the sureties, upon the back of the contract entered into between McGinnis and the Sewing Machine Company, guaranteed the performance of that contract. No question was made as to the terms of the sureties' contract.

The demurrer should have been sustained.

.REVERSED.