THE FOND DU LAC HARROW COMPANY vs. BOWLES, imp.

*February 8 — March 14, 1882.*

*Liability of guarantor.*

By contract between G. and plaintiff, G. was to have the *exclusive* right in certain places to sell harrows bought by him of plaintiff, and was to pay plaintiff for harrows so purchased either "by cash or note due July 1, 1879, with privilege of five months' extension, if desired, with ten per cent. interest." B. guarantied payment by G. for all purchases made by him under such contract, and payment of all notes "or renewals thereof," made by G. in pursuance of the contract. Afterwards, by a written addition to the contract with G., made without the knowledge of B., plaintiff gave him the privilege of selling harrows at a certain other place named. G. sold harrows at such other place, and gave his note for the amount due plaintiff therefor, payable *on or before* November 1, 1879, with interest after July 1, 1879, at ten per cent. In a suit on such note, *Held*,

1. That the liability of B. as surety was not affected by the additional agreement between G. and plaintiff as to the *place* of sale.

2. That there is no *material* difference between the form of the note in suit, given by G., and that described in the contract; and the surety is liable thereon.

APPEAL from the Circuit Court for *Fond du Lac* County. Action upon a contract of guaranty executed by *Susannah Bowles* and others, and to foreclose a mortgage of land executed by *Susannah Bowles* to secure performance of such contract of guaranty. From a judgment in favor of said defendant *Susannah Bowles*, the plaintiff appealed.

The case is more fully stated in the opinion.

For the appellant there was a brief by *Shepard & Shepard*, and oral argument by *T. W. Shepard*. They argued, among other things, that the fair construction of the contract is, that Griffith was to be allowed such extension, not exceeding five months, as he might desire. Any ambiguity in this respect is to be construed most strongly against the guarantor. *Crist v. Burlingame*, 62 Barb., 351; *Locke v. McVean*, 33 Mich., 473; Brandt on Suretyship, §§ 78, 80. And it was not

necessary that the note should be made payable July 1, and the extension afterwards separately granted. A note is but evidence of a debt, even though taken in payment of an account; the extension which the respondent insists should have been separately indorsed on the note, would have been but evidence of the extension; the incorporation of the extension into the note itself is but a combining of evidences, without in the least departing from the substance of the contract. See *Robinson v. Dale*, 38 Wis., 330. Moreover, the extension incorporated into this note was the most favorable one possible to both principal and guarantors — one that did not suspend for an instant the right of payment by either, while it did suspend the right of the creditor to compel payment during the period of the extension. Even if the contract is not to be construed as claimed above, yet Griffith was not cut off from his right to five months' extension by the incorporating of only four months thereof in the note. He was to have five months' extension if desired; he desired four months of it to be incorporated into the note, and that was done; he still had a right to an extension of another month, and a suit brought during that month contrary to his desire would have been dismissed as premature. No suit was in fact brought during that month; *non constat* that the delay was not at Griffith's desire; and the respondent's defense being affirmative, the burden of proof is upon her. *Robinson v. Dale, supra*. Again, the guaranty is broader than the contract to which it relates. Its language contemplates variance from the provisions of the contract by payment partly in cash and partly by note instead of wholly in one way or the other, by payment in several notes instead of one, by repeated renewals of the note or notes; in short, it leaves the appellant free as to how he shall arrange with Griffith for payment. Such being its frame, it will determine the guarantor's liability uninfluenced by any narrower provisions that the guarantied contract may contain. *Bank of British N. A. v. Cuvillier*, 14 Moore's P. C. Cases, 187;

*Thompson v. Roberts*, 17 Irish C. L., 490; *Simons v. Steele*, 36 N. H., 73; *Wadsworth v. Allen*, 8 Gratt., 174; *Parker v. Wise*, 6 M. & S., 239.

For the respondent there was a brief by *Giffin v. Williams*, and oral argument by *N. C. Giffin.* To the point that the taking of the note payable November 1, instead of July 1, and without any stipulation for extension, was such a variance as released the guarantor, they cited: *Walrath v. Thompson*, 6 Hill, 540; *Smith v. Dann*, id., 543; *Birckhead v. Brown*, 5 id., 634; *Leeds v. Dunn*, 10 N. Y., 469; *Dobbin v. Bradley*, 17 Wend., 422; *Wright v. Johnson*, 8 id., 512; *Henderson v. Marvin*, 11 Abb. Pr., 142; *Stewart v. Ranney*, 26 How. Pr., 279; *Appleton v. Parker*, 15 Gray, 173; *Locke v. McVean*, 33 Mich., 473; *Weed S. M. Co. v. Oberreich*, 38 Wis., 325; *Am. B. H., O. & S. M. Co. v. Gurnee*, 44 id., 49; De Golyer on Guaranties, 276; 2 Parsons on Con. (5th ed.), 17; *Hunt v. Smith*, 17 Wend., 179.

ORTON, J.  The plaintiff and one S. N. Griffith entered into a contract at the city of Fond du Lac on the 17th day of December, 1878, by which the plaintiff was to sell and Griffith buy at least 107 harrows, to be delivered on the cars at that place; and Griffith was to have the exclusive right to sell them in certain places in the state of Minnesota named, and in Manitoba, and was to pay the plaintiff for the harrows he purchased, either "by cash or note, due July 1, 1879, with privilege of five months' *extension*, if desired, with ten per cent. interest." Attached to said contract was the following guaranty: " Having read the foregoing agreement, and under- standing the terms and conditions therein, the undersigned, for value received and acknowledged, hereby guaranty that said Griffith will pay for all purchases made, and in case of payment of the whole, or any part thereof, by note, I guaranty payment of such note or notes, or any *renewals* thereof, at ma- turity or any time thereafter;" signed by *Susannah Bowles*,

James H. Haskins, and Ruth A. Griffith. The said *Susannah Bowles* thereupon executed the mortgage sought to be foreclosed in this suit, to secure the plaintiff on said guaranty. Afterwards the following change was made in the contract: "In connection with the above territory allotted, we hereby give S. N. Griffith privilege to sell our harrows at Crookston, Minnesota, and vicinity." Signed by the plaintiff. The circuit court found that the plaintiff duly sold under the principal contract to the defendant Griffith, on the 6th day of March, 1879, 102 harrows for the price of $1,306, and that plaintiff and Griffith had an accounting on the 5th of April, and the sum of $997 remained due from Griffith to the plaintiff on such sales, and that Griffith executed the following note therefor:

"$997.        FOND DU LAC, WISCONSIN, April 5, 1879.

"On or before November 1st, after date, for value received, I promise to pay to the order of Fond du Lac Harrow Company $997, at the Savings Bank of Fond du Lac, with interest at ten per cent. per annum, annually, after July 1, 1879, until paid.

"S. N. GRIFFITH."

It was further found that all of the harrows had been sold, and at Crookston, Minnesota, and that the change of the contract and the making of the note in this form were at the request of Griffith and without the knowledge of the defendant *Bowles*. The learned circuit judge found "that the taking of said note by the plaintiff from the defendant Griffith, payable November 1, 1879, instead of July 1, 1879, without the knowledge or consent of said *Susannah Bowles*, was a departure from the terms of said principal contract, which released said *Susannah Bowles* from all liability under her said guaranty of said principal contract, and annulled said mortgage." It was on this ground alone that judgment was rendered in favor of the defendant *Bowles*, and this presents really the only important question in the case. The learned counsel of the

respondent, however, claims that there were other sufficient grounds for such judgment, such as the change in the contract by the addition of other territory in which the harrows might be sold, and the failure of Griffith to make sales, and his taking in a partner, Haskins, who made all such sales, and the fact that the sales were all made in such added territory.

It might be sufficient to say that this guaranty is strictly limited to the payment of the cash received and the notes given by Griffith to the plaintiff for harrows purchased, and was security for nothing else; and the learned counsel of the respondent very properly contends that the guaranty cannot be extended by construction beyond its terms. Griffith had the right and was bound to purchase of the plaintiff at least 107 harrows, and he purchased only 103 clearly within the contract, and it would seem that the guarantors could have no concern in any other part of the contract. Their liability is fixed as soon as the purchases are made, whatever becomes of the harrows afterwards.

The contract requires that Griffith should personally "work in introducing and selling said harrows in the territory [above allotted] in a thorough business manner." The learned counsel would not contend that the guaranty could be construed to make the guarantors liable for the failure of Griffith to perform this part of the contract. The change alleged of the addition of other territory was certainly very favorable to Griffith as well as to the plaintiff, in increasing the facilities of sales; but of course this would make no difference if such a change was material and the guarantors were concerned in this part of the contract. But this was really no change of the contract. The contract gave Griffith the *exclusive* privilege to sell the harrows in the places first named, and the pretended change gave him the privilege (not exclusive) to sell at Crookston. It does not appear that the plaintiff had any patent-right to dispose of with these harrows, or that they were patented at all. Griffith was not bound by the contract not to

sell anywhere except in the places named. He secured the *exclusive* privilege of selling in those places, and of course had the right and privilege of selling anywhere else, and even at Crookston, if he chose to do so without the consent of the plaintiff.

Whether the note is within the terms of the guaranty is the important question, and it is a very close one.

In all of the cases cited, and we think in all cases, where it was not clearly apparent that a substantial change had been made which discharged the guarantor, and yet where a change of some sort had been made, the *materiality* of the change has been the test. In that part of the brief of the learned counsel of the respondent in which it is argued that the change in the contract in respect to additional territory released the guarantor, *Mrs. Bowles*, he admits that such change must be material to have such effect. If that be so, then the difference between this note and that provided for in the contract must be *material*. There is a difference between the word " extension " in the contract and the word " renewals " in the guaranty; and yet it cannot be doubted that all parties understood and intended that these two words should have substantially the same meaning, so that we can say they are not *materially* different. And so the *materiality* of the difference between this note and the notes described in the contract is the real question. *Robinson v. Dale*, 38 Wis., 330; *Sage v. Strong*, 40 Wis., 575; *Gardner v. Van Norstrand*, 13 Wis., 543; *Stewart v. McKean*, 10 Exch., 675; *Smith v. Addison*, 5 Cranch C. C., 623; *Amicable M. L. Ins. Co. v. Sedgwick*, 110 Mass., 163; *Davey v. Phelps*, 2 M. & G., 300; *Finney v. Condon*, 86 Ill., 78; *Curtiss v. Hubbard*, 9 Met., 322; *Rice v. Filene*, 6 Allen, 230; De Golyer on Guaranties, etc., 398, and note.

It is unnecessary to cite other authorities, as they agree in holding that the changes or differences must be substantial and material to release the guarantor; and all of the authorities cited by the learned counsel of the respondent are to the

same effect, and they will therefore not be considered, unless closely analogous in facts. The case more nearly analogous than any cited, and the one upon which the learned counsel of the respondent chiefly relies for the affirmance of the judgment, and the one the learned judge of the circuit court most probably relied upon in deciding the case, is that of *Locke v. McVean*, 33 Mich. (11 Post), 473. The contract in that case was, "that McVean shall give his note of hand for all purchases of machines at the time of purchase, said notes to be on four months' time, without interest. If so desired, an extension of time will be granted by O. M. Locke, equal to sixty days on each note, said McVean to pay interest therefor at the rate of eight per cent. per annum." McVean gave his five several promissory notes to Locke, each payable six months after date, and each, except the second one, only drawing interest after four months, and then at the rate of eight per cent. The second note was so worded as upon its face to draw interest at seven per cent. from date for the first four months, and thereafter eight. As to the second note the court said: "Clearly this note was a great ways from being the same as one drawn pursuant to the plan covered by the guaranty and then extended sixty days;" and as to the other four notes it said: "But a short computation and comparison will prove that neither of these notes, in regard to length of time or amount of interest, is in substance the same as if drawn four months without interest, and extended sixty days, with interest at eight per cent. during that period. In every case the time and amount are both greater." It will be observed that the only possible reason for the court to say that the time and amount were both greater or even different, is that the extended time in the notes of two months is greater than or different from that in the contract of sixty days; and that without question constituted a material difference. This reason was amply sufficient for the exoneration of the surety in that case; but the court mentions two others, one of which is that

the right to compel reception of payment, and the surrender of the paper, was postponed; and the other that excess of time is afforded for transfer before maturity. The last reason certainly has no force whatever; for so far as the transfer of the note before maturity is concerned, there would be no difference. The extension would have to be made before the note became due, for then the rights of the parties as to the note are fixed and determined past alteration or change. The extension, to have any legal effect whatever, postpones the time of the maturity of the note, and keeps it from becoming due until the extension expires. The extension clause, if inserted in the note, would bind the holder with notice; and if not inserted in the note, the *bona fide* holder without notice would not be bound to extend the time of payment. The other reason, as to the right to compel the reception of payment, is of much force, and the court announced the true rule in such cases by saying, "and these are substantial differences."

In respect to this note, neither the time nor amount of the payment is different from that fixed in the contract, and the note is payable on *or before* the first day of November, 1879, so that the right to compel the reception of payment is not postponed. The contract does not require Griffith to exercise the privilege of extension on the first day of July or any other time, and here he exercised it when the note was given.

The real substance and effect of the contract in respect to the credit given to Griffith for harrows purchased of the plaintiff are, that such credit might be five months or less after July 1, 1879, with ten per cent. interest after that time, or until July 1, 1879, without interest, at the option of Griffith. He exercised that option or privilege in this case by obtaining four months' extension after July 1, 1879, on the above terms. It is evidently true that the *form* of this transaction, according to the contract and the guaranty, was to be

that the note should be first drawn payable July 1, 1879, and that then, before its maturity, Griffith should exercise the privilege of having the time of payment *extended* not to exceed five months, or of having it *renewed* for such time. But wherein is the substantial difference? We are unable to see any material difference in the two cases, and we must therefore hold that the defendant *Bowles,* the guarantor, is liable to pay this note within the terms of her guaranty, and that the plaintiff is entitled to judgment of foreclosure of the mortgage to secure such guaranty.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with direction to render judgment of foreclosure for the amount found due upon said note in the sixteenth finding of fact.