## McGUIRE *v.* GERSTLEY.

---

PLEADING; SET-OFF; BONDS; PRINCIPAL AND SURETY; PAROL EVIDENCE; EVIDENCE; CONTRACTS; MALICIOUS INTERFERENCE; PARTNERSHIP; RECOUPMENT.

1. A plea of set-off is in the nature of a cross action by the defendant. After it has been filed the plaintiff may not discontinue his action without the defendant's consent; and, whether he undertakes to maintain his claim or not, the defendant is entitled to a trial of, and judgment upon, his claim. (Following *Samaha* v. *Samaha*, 18 App. D. C. 76.)

2. A plea of set-off must state facts which not only bring it within the privilege of set-off, but which would also constitute a good cause of action if the party pleading it were the plaintiff in the prosecution of a suit therefor. While the technical formality and accuracy of a declaration may not be required, the plea must, nevertheless, inform the plaintiff, with reasonable certainty, of the particulars of the demand which he is called upon to defend.

VOL. XXVI.—13.

3. In the absence of any agreement with the surety to the contrary, the law imposes no restriction upon arrangements between principals and obligees that may affect the terms and volume of their continuing business.

4. Where a bond neither incorporates nor refers to an alleged contemporaneous agreement between the principals and the obligee, and there is no allegation that the agreement, or the reference to it, was omitted from the bond by mistake, accident, or fraud, evidence is inadmissible, in a suit against the sureties, to prove that such contemporaneous agreement has been violated and the sureties thus discharged. (Following *Newman* v. *Baker,* 10 App. D. C. 187, 194; *Purity Ice Co.* v. *Hawley Down Draft Furnace Co.* 22 App. D. C. 573; *Knight* v. *W. T. Walker Brick Co.* 23 App. D. C. 519; and distinguishing *Donaldson* v. *Uhlfelder,* 21 App. D. C. 489.)

5. One partner has no right of action against a third party for inducing the other partner to terminate the partnership, when such partnership is for no specified term of duration.

6. *Quære,* Whether a surety has a right of action for malicious interference in the partnership contract of his principal.

7. Under D. C. Code, sec. 1563 [31 Stat. at L. 1424, chap. 854], matters of tort cannot be the subject of set-off.

8. No defense is allowable by way of recoupment which is not immediately connected with, or has not arisen out of, the same contract or suit on which the plaintiff relies to maintain his action. (Following *Washington & G. R. Co.* v. *American Car Co.* 5 App. D. C. 524, 529; *Tyler* v. *Mutual District Messenger Co.* 17 App. D. C. 85, 90.)

9. Where two cosureties file separate pleas of a similar nature, the practical result is the same as if they join in one.

No. 1550.    Submitted October 13, 1905.    Decided November 8, 1905.

HEARING on an appeal by the defendants from a judgment of the Supreme Court of the District of Columbia entered on a demurrer to defendants' plea, in an action on a bond. *Affirmed.*

The COURT in the opinion stated the facts as follows:

The appellees, Rosskam, Gerstley, & Co., brought this action against John F. Monaghan, J. Charles McGuire, John W. Clark, and William McGuire, upon a bond executed by them, under seal, on September 11, 1903, and binding them to the plain-

tiffs in the sum of $5,000. The purpose and condition of the said bond read as follows:

"Whereas, the above bounded John F. Monaghan and J. Charles McGuire are desirous of purchasing merchandise from Rosskam, Gerstley, & Company, now and from time to time hereafter, which the said John F. Monaghan and J. Charles McGuire have bound and hereby bind themselves to pay for in four months after the date of each respective purchase;

"Now, therefore, the condition of the foregoing obligation is such, that if the said John F. Monaghan and J. Charles McGuire shall strictly and faithfully pay or cause to be paid to said Rosskam, Gerstley, & Company, for merchandise now and hereafter so purchased, the moneys due and to become due thereon when and as the same shall become due and payable, then this obligation shall be null and void; otherwise it shall remain in full force and virtue."

The declaration alleges that Monaghan and J. Charles McGuire purchased merchandise of the plaintiffs to the amount of $14,497.16, upon which a balance of $5,396.68 is due and unpaid. A statement of the account shows the various items of merchandise, with dates of sales, commencing September 24, 1903, and ending July 27, 1904, and also the items and dates of credit allowed.

Judgment by confession was entered against Monaghan January 27, 1905.

On February 6, 1905, J. Charles McGuire and William McGuire filed two joint pleas of set-off. The first of these alleges that plaintiffs are indebted to Monaghan and J. Charles McGuire in the sum of $10,000, for this, that on August 25, 1903, plaintiffs entered into a certain agreement with said Monaghan and McGuire, that if the latter would form a partnership to carry on the business of wholesale liquor dealers in the District of Columbia, and deal in the merchandise to be furnished by plaintiffs, and would furnish plaintiffs with a bond in the sum of $5,000, with John W. Clark and William McGuire as sureties, conditioned for the payment of the indebtedness to that amount to be incurred by said Monaghan and McGuire,

then plaintiffs would furnish Monaghan and McGuire, from time to time, when requested, "and at certain prices then specified and agreed upon by the parties to said agreement," and would allow them a continuous credit of $10,000; and that said Monaghan and McGuire should sell the same to their customers "upon such terms, as to time and otherwise, as the said Monaghan and McGuire should find and believe to be the best terms attainable, having in view the establishment and maintenance in said District of a demand for the plaintiffs' goods, and that the said Monaghan and McGuire would not be required to pay for said goods so sold to their customers, until they could make collections therefor from their said customers." And it was further understood that said Monaghan and McGuire would enter upon said business without capital other than the continuous credit aforesaid, and that, in order to perform their agreement, they would be compelled to make sales to their customers upon credit, in periods varying according to the circumstances aforesaid; that Monaghan and McGuire formed the said partnership, furnished the said bond, and began business as aforesaid; that at great labor and expense they obtained about eighty customers, to whom they sold on credit the goods purchased from plaintiffs; that on December 10, 1903, the plaintiffs, with intent to destroy the business so established, and to sell goods directly to said customers, drew upon them for $1,500, and wrongfully refused to furnish them any more goods at the prices agreed upon, but demanded a large increase thereof, and thereby forced them to abandon their business, which they had established at an expense of $10,000, and in which their profits were great. That they thereby destroyed the said business and violated the said agreement to the damage of each of said partners in the sum of $10,000, for which J. Charles McGuire claims judgment against the plaintiffs; and defendants are willing shall be set off against the plaintiffs' demand.

The second plea is substantially of the same effect.

William McGuire subsequently filed three additional pleas.

The first plea sets out, briefly but substantially, the agreement

with Monaghan and McGuire, as recited in the first and second pleas before stated, and that the defendant subscribed the bond as surety for them in performance of said agreement. It then alleges that, through the breach of the agreement by plaintiffs, Monaghan and McGuire were prevented from paying for the merchandise furnished them, and thereby defendant has been damaged in the sum of $5,000, which he pleads in set-off.

The second additional plea avers the making of the said agreement, in consideration of which defendant executed the bond, as in the first plea stated. It then further avers that afterwards, on, to wit, December 11, 1903, plaintiffs, without the knowledge or consent of defendant, entered into another agreement with Monaghan and McGuire, by which the prices were changed to the prejudice of defendant, and then again refused to sell merchandise to Monaghan and McGuire, whereby defendant was discharged from all liability on said bond.

The third additional plea avers that all of the merchandise described in the bill of particulars was purchased under the terms of certain agreements not under seal, entered into from time to time before and since September 11, 1903, and not under or according to the terms of the obligation sued on.; wherefore defendant has been discharged.

Defendant then filed three additional pleas. The first of these (numbered 4) alleges the general agreement between plaintiffs and Monaghan and McGuire, and then adds that plaintiffs agreed to sell them goods "at and for certain prices specified in a letter dated August 25, 1903, and sent by the plaintiffs to said Monaghan; and the plaintiffs then represented to this defendant that the said agreement was applicable to all merchandise to be purchased under said writing obligatory, which said letter was so sent and said representations were so made and caused to be made by the plaintiffs with the intent on their part thereby to induce this defendant to execute said writing obligatory, and this defendant, believing said representations to be true, and relying thereon, did set his seal," etc. That thereupon Monaghan and McGuire purchased merchandise amounting to $14,477.16 and no more, of which sum $10,617.55 was

for merchandise purchased at the prices aforesaid, and the remainder, $3,859.61 was for merchandise purchased at prices greatly exceeding the same, under another agreement made about December 11, 1903, without this defendant's knowledge or consent. That Monaghan and McGuire have received the sum of $9,100.48 on said first-named amount, leaving due under said bond the sum of $1,517.17 and no more.

The next additional plea (numbered 5) sets out the general agreement as before, but adds thereto that it was agreed that the merchandise sold should never exceed $10,000; that plaintiffs failed to perform that condition, or any other, and permitted the indebtedness of Monaghan and McGuire to exceed the said sum; whereby defendant has been discharged of his liability under said bond.

The last additional plea reads as follows:

6. And this defendant William McGuire, for a further plea to the said declaration, says that he ought not to be charged with the said debt by virtue of the said supposed writing obligatory, because he says that on or about the date thereof, to wit, September 11, 1903, the defendants John F. Monaghan and J. Charles McGuire entered into a copartnership agreement between themselves to engage in the liquor business under the firm name of Monaghan & McGuire, and to deal in the goods of the plaintiffs, and during the year 1903 the said Monaghan and McGuire established said business and dealt in said goods with great profit to themselves and to the plaintiffs; that said writing obligatory was delivered to the plaintiffs for the purpose of establishing and maintaining the credit of said Monaghan and McGuire with the plaintiffs, and of maintaining said business; but on or about the 12th day of January, 1904, the plaintiffs, well knowing the premises, and with the intent to secure to themselves the customers and business which had been before that time obtained and established by said Monaghan and McGuire, and to sell directly to such customers, and thus increase the profits of the plaintiffs, wrongfully enticed and induced the said Monaghan to withdraw from said copartnership and to enter the employ of the plaintiffs, and as agent of the

plaintiffs to sell their goods to said customers; and thereupon the said Monaghan, yielding to said enticement and inducement, did withdraw from said copartnerhhip, and did enter the employ of the plaintiffs as and for the purposes aforesaid, and thereby the business of said copartnership was wholly destroyed, and said Monaghan and McGuire by reason thereof became and were unable to pay the plaintiffs for the merchandise referred to in said writing obligatory; all which the enticement and inducement by the plaintiffs, and their employment of said Monaghan, as aforesaid, were without the consent or knowledge of this defendant, who was thereby wholly discharged of and from all liability under or by reason of said supposed writing obligatory.

Demurrers were sustained to each of the foregoing pleas, and defendants J. Charles McGuire and William McGuire, electing to stand upon said pleas, judgment was entered against them for $5,000 on February 24, 1905. From this they have jointly appealed.

*Mr. Lorenzo A. Bailey* for the appellants.

*Mr. Simon Wolf, Mr. Myer Cohen,* and *Mr. Eugene A. Jones* for the appellees.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. The court did not err in sustaining plaintiffs' demurrer to the joint pleas of set-off filed by J. Charles McGuire and William McGuire, principal and surety, respectively.

The plea of set-off is in the nature of a cross action by the defendant, who, it is declared in the Code, "shall be deemed to have brought an action, at the time of filing such plea, against the plaintiff for the matters mentioned in the plea." When such plea has been filed, the plaintiff may not discontinue his action without the defendant's consent, and, whether he undertakes to maintain his claim or not, "the defendant shall be en-

titled to a trial of, and judgment upon, his claim." D. C. Code, § 1565 [31 Stat. at L. 1423, chap. 854]; *Samaha* v. *Samaha,* 18 App. D. C. 76.

It follows, necessarily, that the plea must state facts which not only bring it within the privilege of set-off, but would also constitute a good cause of action if the party pleading were the plaintiff in the prosecution of a suit therefor. And while the technical formality and accuracy of a declaration may not be required, the plea must, nevertheless, inform the plaintiff, with reasonable certainty, of the particulars of the demand which he is called upon to defend. *Crawford* v. *Simonton,* 7 Port. (Ala.) 110, 126; *O'Brien* v. *Anniston Pipe Works,* 93 Ala. 582, 584, 9 So. 415; *Garrett* v. *Love,* 89 N. C. 205, 207; Waterman, Set-off, §§ 646, 648; 17 Enc. Pl. & Pr. pp. 751, 752.

The two pleas fail under the application of this test. Without reference to the general vagueness of allegation, it is sufficient to say that they are notably defective in respect of the agreement claimed to have been made between the plaintiffs and Monaghan and McGuire for the sale of merchandise, and of the manner in which that agreement was violated to the injury of them and their sureties. If there was an agreement between the plaintiffs and the principals, of which the contract of the sureties formed a part, and the breach of which occasioned recoverable damage, it was incumbent upon them to set out the terms of the same and the acts of breach with reasonable certainty. What has been said applies also to the first and fourth separate pleas of set-off by William McGuire, the surety.

2. The errors assigned on the striking out of the second, third, and fifth separate special pleas of the surety, William McGuire, can be considered together, as they rest upon substantially the same ground. As general defenses to the action against the surety, they substantially repeat the allegations of the pleas of set-off that have been considered. The fourth plea goes a little further in respect of the agreement made for the sale of merchandise than the others, by alleging that it was contained in a certain letter, which, however, is not set out, nor are its contents in respect of terms, prices, etc., alleged. The fifth

plea omits the reference to the letter, but adds another item of the general agreement which it alleges the violation of, namely, that plaintiffs would never permit the indebtedness of Monaghan and McGuire to exceed $10,000.

It is questionable if these pleas were sufficiently certain and definite; but, assuming that they do state an agreement between the plaintiffs and the principals in the bond, and a breach of that agreement by the plaintiffs, we are of opinion that the court did not err in sustaining the demurrer to each of them.

The sureties, Clark and William McGuire, had no connection with the business of Monaghan and McGuire. One feature of the negotiations and the alleged agreement between them and plaintiffs was that they should furnish the surety bond. Clark and William McGuire brought themselves solely under obligation by executing the bond. This recites that Monaghan and McGuire are desirous of purchasing merchandise from plaintiffs," now and from time to time hereafter," which they "have bound and hereby bind themselves to pay for *in four months after the date of each respective purchase;*" and the condition is that if the said Monaghan and McGuire "shall strictly and faithfully pay or cause to be paid to" plaintiffs, "for merchandise now and hereafter purchased, the moneys due and to become due thereon *when and as the same shall become due and payable,* then this obligation shall be null and void; otherwise," etc. This bond neither incorporates nor refers to the alleged contemporaneous agreement between the principals and the obligees relating to the prices of the merchandise, or the gross amount of sales that might be made upon credit. Contemplating that the credits might exceed $5,000 the sureties expressly limited their liability to that amount. Having fixed this limit, the bond recites what may have been a special stipulation of a general agreement with the principals, and which was of apparent importance to the sureties, namely, that each separate sale of merchandise shall be upon a credit of four months. The bond is, therefore, upon its face, complete in itself, and has no relation to, or dependence upon, a general contemporaneous agreement with the

principals relating to the business to be carried on between them and the obligees.   It is not pretended that by the agreement the principals were bound to deal exclusively with the plaintiffs, and it is reasonable (in fact, a different arrangement would seem extraordinary) that in commencing a business to continue indefinitely future prices would be regulated by a varying market, and amounts of sales by the needs of a probably increasing volume of business.   The bond does not provide for or against such contingencies, either expressly or by inference, but confines itself to a limitation of the amount of the surety's liability and the credits to be given on each sale.   In the absence of any agreement with the surety to the contrary, the law imposes no restriction upon arrangements between principals and obligees that may affect the terms and volume of their continuing business.   *Domestic Sewing Mach. Co.* v. *Webster,* 47 Iowa, 357, 361; *Amicable Mut. L. Ins. Co.* v. *Sedgwick,* 110 Mass. 163, 166.   Both of those cases were actions upon surety bonds, and are directly in point.   See also *Stuts* v. *Strayer,* 60 Ohio St. 384, 387, 71 Am. St. Rep. 723, 54 N. E. 368; *United States Glass Co.* v. *Mathews,* 32 C. C. A. 364, 61 U. S. App. 542, 547, 89 Fed. 828.   The bond, not being by any of its terms dependent upon the agreement between the principals and obligees, the relation between them must depend for its establishment upon parol evidence.   In the absence of any allegation that the agreement was to be incorporated in the bond, or referred to therein as creating a dependence of one upon the other, and that it was omitted through mistake, accident, or fraud, such evidence is inadmissible.   *Domestic Sewing Mach. Co.* v. *Webster,* 47 Iowa, 357, 361; *Seitz* v. *Brewer's Refrigerating Mach. Co.* 141 U. S. 510, 517, 35 L. ed. 837, 840, 12 Sup. Ct. Rep. 46; *Purity Ice Co.* v. *Hawley Down Draft Furnace Co.* 22 App. D. C. 573, 591; *Knight* v. *W. T. Walker Brick Co.* 23 App. D. C. 519, 524; *Newman* v. *Baker,* 10 App. D. C. 187, 194.

It is to be remembered, moreover, that the bond is not merely silent in respect of the alleged contemporaneous agreement, but expressly incorporates one of its stipulations, of obvious impor-

tance to the risk assumed by the sureties, namely, that fixing the credit periods.

It is hardly necessary to remark that there is no allegation in the pleas that the bond was not to take effect as an obligation, except upon the performance of a definite, *precedent* condition, as in *Burke* v. *Dulaney,* 153 U. S. 228, 38 L. ed. 698, 14 Sup. Ct. Rep. 816, and *Donaldson* v. *Uhlfelder,* 21 App. D. C. 489.

3. The sixth special plea of the surety, William McGuire, heretofore recited, must be separately considered.

This plea is not technically one of set-off within the form prescribed by the Code, sec. 1564, but rather of recoupment, although it has been argued in both aspects.

(1) Treating it as a plea of set-off, and assuming that a valid claim for damages comes within the definition of "an indebtedness of the plaintiff to the principal," which the surety might set off under the provisions of section 1568, it is, nevertheless, substantially defective. If it were made the ground of an original action by the other partner, J. Charles McGuire, it would be subject to demurrer, because it does not appear that the partnership with Monaghan, who, it is alleged, terminated it under the malicious persuasion of the plaintiffs, was one for any specified term of duration. No action would lie against Monaghan for terminating a partnership at will. *Karrick* v. *Hannaman,* 168 U. S. 328, 335, 42 L. ed. 484, 489, 18 Sup. Ct. Rep. 135. The motives prompting him in so doing, therefore, are immaterial.

It has been held that if one maliciously interferes in a contract between two parties, and induces one of them to break that contract to the injury of the other, the party injured can maintain an action against the wrongdoer. *Angle* v. *Chicago, St. P. M. & O. R. Co.* 151 U. S. 1, 13, 38 L. ed. 55, 62, 14 Sup. Ct. Rep. 240; *Leonard* v. *Abner-Drury Brewing Co.* 25 App. D. C. 161, 175. If, however, the conditions were such that the aggrieved partner might have a cause of action against the plaintiffs, it would not be maintainable by him or his surety by way of set-off under the Code. Section 1563 thereof provides that "mutual debts and claims, under contract between the parties to

a common- law action, or between [any of the several defendants and the plaintiff], * * * may be set off against each other by the plea in bar, whether said debts or claims be of the same or a different nature or degree, and whether the claims be for liquidated debts or unliquidated damages for breach of contract; and if either debt be in the form of a penalty of a bond the exact sum to be set off shall be stated in the plea." [31 Stat. at L. 1422, chap. 854.]

Liberal as this section is in permitting set-off, it embraces matters of contract only; and while unliquidated damages for a breach of the contract relating to the sale or warranty of the goods could be set off in an action by the vendors for their value, no damages for a mere tort, as is the case in this plea, can be so pleaded. Matters of mere tort are clearly not within the statute.

Assuming, but without intending to intimate an opinion, that the surety has a right of action for malicious interference in the matter of the partnership contract of his principal, whether that principal has or has not a similar right, it necessarily falls within the same rule of exclusion.

(2) On the other hand, regarding the plea as one of recoupment at common law, independent of any statute, it is likewise bad. The rule which permits the introduction of evidence in defense of actions upon contracts, in mitigation, diminution, or extinction of damages, has been liberally expounded by the courts of common law generally, without the sanction of statutes, through the natural desire to avoid circuity and multiplicity of actions. But no one of these, so far as we are advised, has ever permitted defenses by way of recoupment that were not immediately connected with, or had not arisen out of, the same contract or suit on which the plaintiff relied to maintain his action. See *Van Buren* v. *Digges,* 11 How. 461, 475, 13 L. ed. 771, 776; *Winder* v. *Caldwell,* 14 How. 434, 443, 14 L. ed. 487, 491 (both cases arising in the District of Columbia); *Dushane* v. *Benedict,* 120 U. S. 630, 30 L. ed. 810, 7 Sup. Ct. Rep. 696, and cases therein reviewed; *Washington & G. R. Co.* v. *American Car Co.* 5 App. D. C. 524, 529; *Tyler* v. *Mutual District Messenger Co.* 17 App. D. C. 85, 90.

(3) We have not deemed it important to consider the objection that one of the sureties could not maintain a separate cross action for the damage done to both by the same wrongful act, because the cosurety has filed a similar plea, and the practical result is the same as if they had joined in one.

The judgment must be affirmed, with costs, and it is so ordered.                                          *Affirmed.*

A writ of error to the Supreme Court of the United States was allowed December 6, 1905.